UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
HERMAN CUMMINGS,

        *Plaintiff*,

                              **MEMORANDUM AND ORDER**

    v.

                              19-cv-2071(KAM)

COMMISSIONER OF SOCIAL SECURITY,

        *Defendant*.
--------------------------------X
**MATSUMOTO, United States District Judge:**

        Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), Herman
Cummings ("plaintiff") appeals the final decision of the
Commissioner of Social Security ("defendant"), which found that
plaintiff was not eligible for Supplemental Security Income
("SSI") disability benefits under Title XVI of the Social
Security Act ("the Act"), on the basis that plaintiff is not
disabled within the meaning of the Act.  Plaintiff alleges that
he is disabled under the Act and is thus entitled to receive the
aforementioned benefits.

        Presently before the court is plaintiff's motion for
judgment on the pleadings (ECF No. 17, "Pl. Mot.", and ECF No.
18, "Pl. Mem."), defendant's cross-motion for judgment on the
pleadings (ECF No. 19, "Def. Cross-Mot.", and ECF No. 20, "Def.
Mem."), and plaintiff's reply to defendant's cross-motion (ECF
No. 21, "Pl. Reply".)  For the reasons stated below, plaintiff's
motion is GRANTED, defendant's cross-motion is respectfully

DENIED, and the case is remanded for further proceedings consistent with this Memorandum and Order.

**BACKGROUND**

## I. Procedural History

In January 2010, plaintiff Herman Cummings first applied for SSI disability benefits and was found to be disabled.  (ECF No. 1, Complaint ("Compl.").)  He was paid SSI disability benefits from February 2010 to September 2014.  (*Id.*)  In September 2014, the Social Security Administration ("SSA") discontinued plaintiff's SSI benefits, allegedly asserting that he had requested to withdraw his request for a hearing.  (*Id.*)  On October 1, 2014, plaintiff refiled an application for Title XVI disability insurance benefits.  (ECF No. 22, Administrative Transcript ("Tr.") 16.)  The date of alleged onset of plaintiff's disability is September 2, 2009 (*id.*), and plaintiff claims that he has been disabled as a result of bilateral shoulder impingement, an essential tremor, depression, and anemia.  (ECF No. 1, Compl.)  On March 17, 2016, plaintiff's claim was denied.  (Tr. 16.)

On April 7, 2015, plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (*Id.*)  On September 12, 2017, plaintiff appeared, along with his attorney, Mr. Bose, and testified before ALJ Margaret Donaghy.  (Tr. 15-16.)  Vocational expert ("VE") Jeffrey Barrett also testified.  By a decision

dated October 24, 2017, the ALJ determined that plaintiff was not disabled within the meaning of the Act and was thereby not entitled to benefits. (Tr. 13-23.)

On December 27, 2017, plaintiff appealed the ALJ's decision to the Appeals Council. (Tr. 224-25.) On February 6, 2019, the Appeals Council denied review of the decision, thereby rendering final the ALJ decision. (Tr. 1-5.) On April 9, 2019, plaintiff filed the instant action and his motion for leave to proceed *in forma pauperis* in federal court. (ECF Nos. 1 and 2.) On April 12, 2019, the court granted plaintiff's motion to proceed *in forma pauperis* and issued a scheduling order for the case. (Dkt. Order dated 4/12/19.)

On April 17, 2019, the court amended the scheduling order. (Dkt. Order dated 4/17/19.) On September 9, 2019, plaintiff filed a motion for extension of time to file his motion for judgment on the pleadings. (ECF No. 11, Letter Motion for Extension of Time to File.) On September 10, 2019, the court granted in part and denied in part plaintiff's motion, granting plaintiff's consent motion and denying the parties' inclusion of a sur-reply by defendant. (Dkt. Order dated 9/10/2019.) On October 9, 2019, plaintiff again filed a motion for extension of time to file his motion for judgment on the pleadings. (ECF No. 12, Letter Motion for Extension of time to File.) Once more, on October 10, 2019, the court granted in

3

part and denied in part plaintiff's motion for the same reasons
stated above.  (Dkt. Order dated 10/10/2019.)  On October 17,
2019, plaintiff filed once again a motion for extension of time
to file his motion for judgment on the pleadings.  (ECF No. 13,
Letter Motion for Extension of Time to File.)  On October 17,
2019, the court granted plaintiff's motion for extension of time
to file.  (Dkt. Order dated 10/17/2019.)

On January 15, 2020, plaintiff filed his notice of
motion and memorandum of law in support of plaintiff's motion
for judgment on the pleadings.  (ECF Nos. 17 and 18.)  On that
same day, defendant filed its cross-motion and memorandum of law
in support of defendant's cross-motion for judgment on the
pleadings and in opposition of plaintiff's motion for judgment
on the pleadings.  (ECF Nos. 19 and 20.)  Later that same day,
plaintiff filed his reply memorandum of law.  (ECF No. 21, Pl.
Reply.)

## II.  Medical and Non-Medical Evidence

On January 15, 2019, the parties submitted Joint
Stipulated Facts.  (ECF No. 20-1, Joint Stipulation of Relevant
Facts ("Facts").)  The court incorporates the facts contained
therein.

### a. Relevant Medical Evidence

On March 9, 2015, at the request of the SSA, plaintiff
was examined by Dr. Lyudmila Trimba.  (Tr. 334-37.)  Plaintiff's

4

chief complaint was bilateral shoulder pain and right foot pain. (Tr. 334.)  Plaintiff stated that he had bilateral shoulder pain since 2009 which worsens with movement, lifting, and overhead activities.  (*Id.*)  In 2009, he had arthroscopic surgery of his bilateral shoulder at the Long Island Jewish Hospital and, since then, he reported 5/10 on the pain scale from one to ten.  (*Id.*) He does not take pain medication for his shoulder pain, but he did physical therapy after the surgery.  (*Id.*)  He also stated that he had right foot pain for two years.  (*Id.*)  In October 2013, plaintiff had right foot surgery for osteoarthritis at Brooklyn Hospital and, since then, he reported 5/10 on the pain scale from one to ten.  (*Id.*)  Plaintiff further stated that the foot pain gets worse with walking and standing, and he can only walk one to two blocks and one flight of steps.  (*Id.*)  Finally, plaintiff complained of bilateral hand benign tremors for which he is taking medication.  (*Id.*)

Dr. Trimba examined plaintiff and concluded that plaintiff was in no acute distress and had a normal gait.  (Tr. 335.)  Dr. Trimba reported that plaintiff "[c]an walk on heels and toes complaining of pain in the right foot.  He can do a full squat.  Stance is normal . . . . Needed no help changing for exam or getting on and off exam table.  Able to rise from chair without difficulty."  (*Id.*)

On September 15, 2015, plaintiff was examined by Nurse Practitioner ("NP") Keran Hill at Brightpoint Health for an initial evaluation.  (Tr. 393-97.)  NP Hill reported that plaintiff was taking Propranolol daily for involuntary tremors that he has had since childhood.  (Tr. 396.)  Plaintiff stated that he did not have any pain.  (Tr. 393.)  NP Hill concluded that he was in a "good general state of health, denies changes in ap[p]etite or weight, denies: fever, fatigue, weakness, is able to do usual activities, good exercise tolerance."  (Tr. 394.)  He reported "no muscle or joint pain, no neck/backache/shoulder pain, no swelling or redness in joints, no limitation in motion, no muscle weakness."  (*Id.*)

On September 29, 2015, plaintiff saw NP Hill again for a lab review.  (Tr. 390-92.)  NP Hill assessed that plaintiff had prediabetes, anemia and latent tuberculosis infection ("LTBI").  (Tr. 391.)  NP Hill prescribed plaintiff Isoniazid for LTBI, iron tablets for his anemia, and advised plaintiff on dietary considerations for the prediabetes.  (*Id.*)

On October 13, 2015, plaintiff returned to see NP Hill for a follow-up.  (Tr. 387-89.)  NP Hill reported that "100% adherence to TB medications encouraged with side/adverse affects discussed."  (Tr. 388.)  NP Hill also assessed plaintiff's rare disorder that causes involuntary movements and spasms.  (*Id.*)  NP Hill advised plaintiff to continue taking Propranolol to

6

manage symptoms. (*Id.*) Finally, plaintiff was advised to consider quitting smoking. (*Id.*)

On October 27, 2015, plaintiff returned to see NP Hill for another follow-up. (Tr. 384-86.) Plaintiff reported that he was taking his prescribed medication and denied missing any doses. (Tr. 384.) He also denied any concerns or issues at that time. (*Id.*) NP Hill concluded that he was in a good general state of health and he reported no pain. (*Id.*)

On October 29, 2015, plaintiff was seen by NP Thomas Perron for a psychiatric and psychosocial evaluation. (Tr. 381-83.) Plaintiff stated that he was "depressed for past 3-4 months." (Tr. 381.) He reported having little interest or pleasure in doing things, feeling down, and feeling hopeless. (*Id.*) NP Perron assessed plaintiff as having adjustment disorder with depressed mood. (Tr. 382.) NP Perron advised plaintiff to continue taking his prescribed medication and recommended psychotherapy. (Tr. 381-82.)

On November 24, 2015, plaintiff returned to see NP Hill for another follow-up. (Tr. 378-80.) NB Hill reported that plaintiff was taking his current medications as prescribed and denied any side effects or symptoms of TB. (Tr. 378.) Plaintiff was also treated for acid reflux and was advised on diet modifications. (Tr. 378-79.) Plaintiff was also counseled on the dangers of smoking and he was urged to quit. (Tr. 379.)

On December 3, 2015, plaintiff was seen by NP Hill for treatment for the common cold. (Tr. 375-77.) On December 24, 2015, plaintiff again saw NP Hill for an upper respiratory infection. (Tr. 372-74.) Plaintiff was prescribed medication and was advised again to stop smoking. (Tr. 373.) NP Hill also reported that plaintiff was in a good general state of health, was able to do usual activities, and had good exercise tolerance. (Tr. 372.)

On February 23, 2016, plaintiff was seen by NP Hill for a follow-up. (Tr. 367-71.) Plaintiff complained of body aches, coughing, and yellow phlegm. (Tr. 367.) He also stated that his tremors improved, but he was out of medication. (*Id.*) NP Hill renewed plaintiff's prescription and reported that he was in good general state of health, was able to do usual activities, and had good exercise tolerance. (Tr. 367, 370.)

On March 16, 2016, plaintiff was seen by NP Hill for another follow-up. (Tr. 364-66.) NP Hill reported that plaintiff "reports tremor with intention. He reports taking propranolol daily, but he does not believe medication is working. He reports belief tremor is worsening. Denied pain." (Tr. 364.) NP concluded that plaintiff was in a good general state of health and was in no acute distress. (*Id.*) NP Hill referred him to a doctor because of his involuntary bilateral

tremor in his hands that was not improving with the prescribed medication.  (Tr. 365-66.)

On April 13, 2016, plaintiff was seen by NP Hill for a follow-up.  (Tr. 361-63.)  Plaintiff reported that he was generally feeling well but sometimes he had a headache.  (Tr. 361.)  Additionally, plaintiff stated that his upper respiratory symptoms have cleared up.  (*Id.*)

On May 4, 2016, plaintiff was seen by NP Hill for a sore throat.  (Tr. 357-60.)  During this examination, plaintiff reported that his tremors were stable and that he had a follow-up with a neurologist later in the month.  (Tr. 358.)  NP Hill concluded that plaintiff was in a good general state of health with no acute distress.  (Tr. 357.)

On November 28, 2016, plaintiff was seen by Jonathan Zellan, M.D. for his annual physical.  (Tr. 348-56.)  Dr. Zellan noted that "Patient reports that he has a tremor when he wakes up in the morning.  He has had this for years.  The only way he can get the tremor to [] stop is by drinking.  He drinks a couple of beers and it gets better.  He was getting propranolol and it helps a little."  (Tr. 349.)  Dr. Zellan concluded that plaintiff was in a good general state of health, was able to do usual activities, had good exercise tolerance, and was in no acute distress.  (*Id.*)

On December 14, 2016, plaintiff was seen by NP Vanna
Kham for a follow-up.  (Tr. 344-47.)  Plaintiff stated that he
had tremors in his hands.  (Tr. 345.)  He also reported to
"drinking 2 bottles of 40 ounce beer daily.  [S]tates he has
enrolled in detox prog[ram]s in past with no effect.
[R]efuse[s] detox at this time."  (Tr. 344.)  Plaintiff was
counseled on reducing his alcohol consumption and again on
quitting smoking.  (Tr. 346.)  NP Kham also noted that plaintiff
"was given referral in past to neurologist.  [N]o [appointments]
made.  [W]ill re-refer."  (*Id.*)  NP Kham concluded that
plaintiff was in a good general state of health.  (Tr. 345.)

On December 22, 2016, plaintiff returned to see NP
Kham for a painful lump to his right axilla.  (Tr. 342-43.)
Plaintiff was advised to place a warm compress on it and if it
grew any larger or more painful, to go to the emergency room.
(Tr. 343.)  Dr. Kham concluded that plaintiff was in no acute
distress and that he was in a good general state of health.
(Tr. 342-43.)

On February 28, 2017, plaintiff was seen by NP Hill
for a follow-up.  (Tr. 339-41.)  Plaintiff reported that when he
holds any objects, his tremor is "uncontrollable."  (Tr. 339.)
NP Hill noted that "Patient reports that he drinks a 6-pack beer
every day.  Patient said that he has been consuming 2 years.
States that [] the tremors ha[ve] been ongoing long before his

10

alcohol use." (Tr. 340.)  NP Hill advised plaintiff to follow
up with his neurology appointment and to reduce his alcohol
consumption.  (*Id.*)  NP Hill noted that the alcohol "may be a
factor for his tremors." (*Id.*)  NP Hill concluded that
plaintiff was in a good general state of health, had no
weakness, fatigue or fever, had a good exercise tolerance, was
able to do usual activities, and was in no acute distress.  (Tr.
339.)

### b. Relevant Non-Medical Evidence

Plaintiff was born on October 20, 1963.  (Tr. 226.)
The highest grade of school he completed was the 8th grade which
took place in 1980.  (Tr. 257.)  Plaintiff did not receive a
GED, nor did he receive other vocational training or education.
(Tr. 120.)  Plaintiff is not married, and he does not have any
children.  (Tr. 121.)  At the ALJ hearing, plaintiff testified
that he was living in a shelter since 2013 due to cessation of
his benefits.  (*Id.*)  Plaintiff had no significant past relevant
work.  (Tr. 118.)  He testified that he worked a summer job back
in the 1980s and in 2016 he cleaned for another shelter named
Bellview.  (Tr. 122-23.)  The cleaning job was part time, five
days a week from 8:00 a.m. to 4:00 p.m.  (Tr. 123.)  Plaintiff
stated that he did not recall the exact salary, but it was
around minimum wage.  (*Id.*)  He had some trouble with the
cleaning job whenever he was asked to move or shift something

11

around.  (Tr. 130.)  Plaintiff stopped working at the cleaning
job because it was for a six-month term of employment.  (Tr.
124.)  Plaintiff testified that, if the job had continued, he
would "not really" have been able to continue.  (*Id.*)  He stated
that he started having back and shoulder pain from his past
injuries and pain in his elbows during the night.  (*Id.*)
Plaintiff also testified, however, that his problems with his
shoulders and right foot did not prevent him from doing the
cleaning work.  (Tr. 136-37.)  He has not had a job since the
cleaning job ended.  (Tr. 124.)

Plaintiff testified that his tremors prevented him
from doing the kind of cleaning work that he was doing before
and also any other kind of work.  (Tr. 125.)  Plaintiff stated
"I wake up in the morning.  I can't hold water.  I got to, I
can't eat cereal, I can't use forks because I'll stick myself in
the mouth I tremor so bad."  (*Id.*)  Instead, plaintiff has to
use spoons to eat so he doesn't stick himself in the tongue or
in the mouth.  (Tr. 133-34.)  Plaintiff testified that he was
prescribed medication for the tremors, but the tremors only
slightly calmed down.  (*Id.*)

In October 2014, when plaintiff applied for SSI, the
SSA claims representative noted that plaintiff "was presentable
and cooperative.  He was visibly trembling and could not
complete the paper 3368 because of his tremors.  Even when

12

separating documents he wanted to present, he had extreme difficulties." (Tr. 253.)

Plaintiff further testified that he also had back pain and numbness in his hand at night. (Tr. 125.) He was prescribed medication for the pain and had no side effects from it. (Tr. 126.) He stated that he could only stand about an hour or two and then he must sit due to bad kneecaps and his legs beginning to give out. (Tr. 126-27.) Plaintiff stated that he can walk, but not for long; a block or two, three at most. (Tr. 127.) He stated that he can lift maybe 25 or 50 pounds. (*Id.*)

Plaintiff testified that he is in an outpatient alcohol treatment program at his shelter and is no longer consuming alcohol. (Tr. 127-28.) He stated that stopping drinking has not improved his tremors and that he has had them for years. (Tr. 134.) He started smoking cigarettes when he was thirteen years old and smokes a pack daily. (Tr. 335.) Plaintiff also attends a group psychiatrist meeting twice a week, which he started attending about a month before the ALJ hearing. (Tr. 128.) Plaintiff has no issues with taking public transportation, personal care such as bathing, showering and dressing, preparing meals for himself, and doing his own laundry. (Tr. 129.) On a typical day, plaintiff stays inside

the shelter's common room and watches television, or sits in the yard. (*Id.*)

Additionally, plaintiff testified that he has had two shoulder surgeries. (Tr. 134.)  The first surgery was in 2009, and the second was in 2013. (*Id.*)  Plaintiff stated that he believed that the elbow pain he began experiencing in the month before the hearing is a result of one of the surgeries. (Tr. 134-35.)  He stated that his shoulder pain prevents him from being able to carry much, and as an example he said he could only carry a gallon of milk from the store to the shelter, but he "couldn't carry it two or three blocks." (Tr. 135.)  Plaintiff also stated that he has arthritis in his right foot, and feels aches and pains when it rains or gets cold out. (Tr. 136.)

Plaintiff testified that back in 2010 when he was granted benefits, he was found disabled from meeting listing 1.02. (Tr. 137.)  From then up until the hearing, plaintiff stated that his shoulders have not improved, but rather the pain has gotten worse. (Tr. 137-38.)  Additionally, the numbness in his hands still occurs. (Tr. 138.)

### c. Vocational Expert Opinion

At the ALJ hearing, VE Jeffrey Barrett testified. (Tr. 138.)  The VE identified plaintiff's past cleaning work as a "Cleaner, Commercial or Institutional. 381.687-014. It's

14

heavy duty, SVP 2." (Tr. 139.) The ALJ stated a hypothetical situation:

> If we consider an individual of the claimant's age which is currently 50-53 years old, the same education which is through the 8th grade, and consider no past relevant work experience. Further assume this individual can lift and carry 50 pounds occasionally, 25 pounds frequently. This individual can stand and walk for a total of six hours in an eight hour day and sit for a total of six hours in an eight hour day. And this individual could frequently but not constantly handle and finger. Would there be jobs that individual could do?

Tr. 139. The VE stated that this hypothetical individual could be a Bagger 920.687-014, which is medium duty, SVP 2, and that 705,660 individuals were engaged in that occupational cluster in the national economy. (Tr. 140.) The VE also suggested a General Helper 522.686-014, which is medium duty, SVP 2, and that 58,070 individuals were engaged in that occupational cluster in the national economy. (*Id.*) Finally, the VE suggested a Cleaner II 919.687-014, which is medium duty, SVP 1, and that 348,770 individuals were engaged in that occupational cluster in the national economy. (*Id.*)

The ALJ then altered the hypothetical to reflect that the individual could only occasionally handle and finger, and asked if the results would change. (*Id.*) The VE testified that "would eliminate all three of these." (Tr, 141.) The VE

further stated that for occasional handling "we would not find anything unskilled at medium duty."  (*Id.*)

## LEGAL STANDARD

## I.   Substantial Evidence or Legal Error

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits "within sixty days after the mailing . . . of notice of such decision or within such further time as the Commissioner of Social Security may allow."  42 U.S.C. §§ 405(g), 1383(c)(3).  A district court, reviewing the final determination of the Commissioner, must determine whether the correct legal standards were applied and whether substantial evidence supports the decision.  *See Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998).

A district court may set aside the Commissioner's decision only if the factual findings are not supported by substantial evidence or if the decision is based on legal error. *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008). "Substantial evidence is 'more than a mere scintilla,'" and must be relevant evidence that a reasonable mind would accept as adequate to support a conclusion.  *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (citing *Richardson v. Perales*, 420 U.S. 389, 401 (1971)).  If there is substantial evidence in the

record to support the Commissioner's factual findings, those findings must be upheld.  42 U.S.C § 405(g).  Inquiry into legal error "requires the court to ask whether 'the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the [Social Security] Act.'"  *Moran v Astrue*, 569 F.3d 108, 112 (2d Cir. 2009).  The reviewing court does not have the authority to conduct a *de novo* review and may not substitute its own judgment for that of the ALJ, even when it might have justifiably reached a different result.  *Cage v. Comm'r*, 692 F.3d 118, 122 (2d Cir. 2012).

Before determining whether the Commissioner's final decision is supported by substantial evidence under 42 U.S.C. § 405(g), "the court must first be satisfied that the ALJ provided plaintiff with 'a full hearing under the Secretary's regulations' and also fully and completely developed the administrative record."  *Scott v. Astrue*, No. 09-CV-3999 (KAM), 2010 WL 2736879, at *12 (E.D.N.Y. July 9, 2010) (quoting *Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982)); *see also Rodriguez v. Barnhart*, No. 02-CV-5782 (FB), 2003 WL 22709204, at *3 (E.D.N.Y. Nov 7, 2003).  The purpose of the administrative review process should be investigatory and beneficent, not adversarial.  See 20 C.F.R. § 405.1(c)(1) ("In making a determination or decision on your claim, we conduct the administrative review process in a non-

adversarial manner."); *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) ("The model is investigatory, or inquisitorial, rather than adversarial").

In social security appeals, the court must base its review "upon the pleadings and transcript of the record." 42 U.S.C. § 405(g). The court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Id.* "[R]emand based on the need to review new evidence requires '(1) a showing that there is new and material evidence and (2) good cause for the failure to incorporate that evidence into the record in a prior proceeding.'" *Rose*, 202 F. Supp. 3d at 241 (quoting *Skrodzki v. Comm'r*, No. 11-CV-5173 (MKB) 2013 WL 55800, at *4 (E.D.N.Y. Jan. 3, 2013)).

New evidence is considered material if "(1) it is relevant to the claimant's condition during the time period for which benefits were denied, (2) it is probative, and (3) there is a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently." *Williams v. Comm'r*, 236 F. App'x 641, 644 (2d Cir. 2007) (internal quotation marks and citation omitted). For example, "subsequent evidence of the severity of a condition

18

suggest[ing] that the condition may have been more severe in the past than previously thought" could be material. *Id.*

Further, if there is substantial evidence in the record to support the Commissioner's factual findings, those findings must be upheld. 42 U.S.C § 405(g). Inquiry into legal error "requires the court to ask whether 'the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the [Social Security] Act.'" *Moran v Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). The reviewing court does not have the authority to conduct a *de novo* review and may not substitute its own judgment for that of the ALJ, even when it might have justifiably reached a different result. *Cage v. Comm'r*, 692 F.3d 118, 122 (2d Cir. 2012).

## II. Five Step Sequential Evaluation

To receive disability benefits, a claimant must be "disabled" within the meaning of the Act. *See* 42 U.S.C. §§ 423(a), (d). A claimant meets this requirement when he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A); *Shaw,* 221 F.3d at 131-32. The impairment must be of "such severity" that the claimant is

unable to do his previous work or engage in any other kind of substantial gainful work.  42 U.S.C. § 423(d)(2)(A).

Pursuant to regulations promulgated by the Commissioner, a five-step sequential evaluation process is used to determine whether the claimant's conditions meet the Act's definition of disability.  *See* 20 C.F.R. § 404.1520.  During this five-step process, the Commissioner must consider whether "the combined effect of any such impairment . . . would be of sufficient severity to establish eligibility for Social Security benefits."  20 C.F.R. § 4040.1523.  Further, if the Commissioner does not find a combination of impairments, the combined impact of the impairments, including those that are not severe (as defined by the regulations), will be considered in the determination process.  20 C.F.R. § 416.945(a)(2).

At steps one through four of the sequential five-step framework, the claimant bears the "general burden of proving . . . disability."  *Burgess*, 537 F.3d at 128. At step five, the burden shifts from the claimant to the Commissioner, requiring that the Commissioner show that, in light of the claimant's residual functional capacity, age, education, and work experience, the claimant is "able to engage in gainful employment within the national economy."  *Sobolewski v. Apfel*, 985 F. Supp 300, 310 (E.D.N.Y. 1997).

"The Commissioner must consider the following in determining a claimant's entitlement to benefits: '(1) the objective medical facts [and clinical findings]; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability . . . ; and (4) the claimant's educational background, age, and work experience.'" *Balodis v. Leavitt*, 704 F. Supp. 2d 255, 262 (E.D.N.Y. 2001) (*quoting Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (alterations in original)).

## DISCUSSION

Plaintiff's motion for judgment on the pleadings contends that ALJ Margaret Donaghy's residual functional capacity ("RFC") finding for medium work was not consistent with established limitations related to his involuntary tremors, and the RFC failed to account for limitations in reaching and handling.  (ECF No. 18, Pl. Mem.)  Specifically, plaintiff asserts that his "involuntary tremor should have led the ALJ to conclude that [he] is unable to meet the grasping, holding, and turning demands of medium work."  (*Id.* at 4.)  In the Commissioner's cross-motion for judgment on the pleadings, defendant contends that the RFC finding was supported by substantial evidence and appropriately found that plaintiff could perform medium work.  (ECF No. 20, Def. Mem.)  Plaintiff submitted a reply memorandum, asserting again that plaintiff lacks the capacity to perform medium work due to tremor

21

disorder, plaintiff's history of bilateral shoulder surgery, and the need to avoid overhead activities due to his arthritis. (ECF No. 21, Pl. Reply.)

For the reasons set forth below, the court finds that the ALJ's decision was not supported by substantial evidence. Thus, the court orders a remand for further findings on these grounds.

## I.   The ALJ's Disability Determination

Using the five-step sequential process mandated by 20 C.F.R. § 416.971 to determine whether plaintiff is disabled, the ALJ determined at step one that plaintiff had engaged in substantial gainful activity during the third and fourth quarters of 2016 when he worked at Bellview shelter for six months. (Tr. 18.) The ALJ concluded, however, that there had been a continuous 12-month period during which plaintiff did not engage in substantial gainful activity. (Tr. 19.)

At step two, the ALJ found that plaintiff suffered from severe impairments of anemia, bilateral shoulder internal derangement, unspecified tremor, depressed mood, and substance abuse. (*Id.*) The ALJ also considered that plaintiff had pre-diabetes, latent tuberculosis and lipoma of the axilla, but found those conditions were not severe impairments because plaintiff did not complain of those problems and there was no evidence that they caused any vocational limitations. (*Id.*)

22

At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926). (*Id.*) Specific consideration was given to listing 1.02 (major dysfunction of a joint due to any cause). The ALJ concluded that the record did not establish the inability to perform fine and gross movements effectively. (*Id.*) Specifically, the ALJ found that plaintiff's hand and finger dexterity was found to be intact with grip strength and upper and lower extremities strength all scored 5/5. (*Id.*) Further, the ALJ found that plaintiff's mental impairment did not meet or medically equal the criteria of listing 12.04. (*Id.*)

At step four, the ALJ found that plaintiff had the RFC to perform medium work with some additional restrictions. (Tr. 20.) Specifically, the ALJ found that plaintiff could "lift/carry 50 pounds occasionally and 25 pounds frequently; stand/walk 6 hours and sit 6 hours in an 8-hour workday; and, can follow simple instructions, do simple tasks, and do some detailed tasks." (*Id.*) In arriving at this RFC, the ALJ stated that she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" and "also

23

considered opinion evidence." (*Id.*)  The ALJ found that though plaintiff's "medically determinable impairments could reasonably be expected to cause some symptoms[,] the evidence generally does not support [plaintiff's] alleged loss of functioning to the degree a finding of complete disability is appropriate." (*Id.*)  With respect to plaintiff's mental health, the ALJ noted that plaintiff reported a "brief" period of depression in 2015, but the mental status examination and treatment notes from that period also revealed that plaintiff was "alert to person, place, time and situation and [had] good concentration, good fund of knowledge, good short-term recall, good insight, good impulse control, good recall/retention, good long-term recall, good intellectual functioning, good judgment, and good ability to abstract." (*Id.*)

At step five, the ALJ found that plaintiff was capable of performing work that was available in the national economy. Specifically, the ALJ found that plaintiff's "non-exertional impairments allows [sic] him to perform the full range of unskilled medium work, thereby allowing the direct application of the Medical-Vocational Rules.  Accordingly, considering the claimant's age, education, and work experience, a finding of 'not disabled' is directed by Medical-Vocational Rule 203.18 despite the presence of non-exertional limitations." (Tr. 23.) Thus, the ALJ concluded that plaintiff was not disabled within

the meaning of the Act, as defined in 20 C.F.R. § 416.920(g),
since October 1, 2014 through the date of the hearing.  (*Id.*)

## II.   The ALJ's Decision Was Not Supported by Substantial Evidence and Incorrectly Concluded that Plaintiff Could Perform Medium Work in the Economy

To support her findings that the record did not
support a finding that plaintiff suffered from disabling
limitations, the ALJ referred to a number of facts reflected in
the record and drew various inferences from them.  (*See* Tr. 20-
22.)  The ALJ concluded that "the claimant's medically
determinable impairments could reasonably be expected to cause
some symptoms; however, the evidence generally does not support
the claimant's alleged loss of functioning to the degree a
finding of complete disability is appropriate."  The ALJ relied
on evidence that, on one occasion, "the examiner did not notice
any hand tremors" and plaintiff's grip strength was 5/5.  (Tr.
21, 333-37.)  The ALJ failed to mention, however, that on
numerous other occasions, it was noted by medical providers that
plaintiff had "uncontrollable" hand tremors.  (*See, e.g.*, Tr.
339.)

The ALJ determined that, subject to certain
limitations, plaintiff had the RFC to perform medium work and,
therefore, was not disabled under the Act.  20 C.F.R. §
404.1567(c) (defining "medium work").  Under Social Security
regulations, "medium work involves lifting no more than 50

25

pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c). For medium work, a claimant must be able to "frequent[ly] lift[] or carry[] objects weighing up to 25 pounds" and lift "no more than 50 pounds." *Id.* Plaintiff asserts that he is unable "to meet the grasping, holding, and turning demands of medium work." (ECF No. 18, Pl. Mem.) The ALJ noted that, although plaintiff suffered from hand tremors, he was prescribed Propranolol, which helped with the symptoms. (Tr. 21, 133.) The ALJ selectively cited parts of the record where plaintiff reported that Propranolol was effective, (*see* Tr. 349, 357), however, there were numerous other instances in the record where plaintiff reported that the medication was not effective in reducing his tremors. (Tr. 339, 364, 398, 423.)

The ALJ also ignored parts of the record, wherein plaintiff reported that the tremors prevented him from using a fork, eating cereal, or holding a glass. (Tr. 125, 134.) The ALJ also overlooked a statement written by the SSA claims representative that plaintiff had difficulty writing because he was "visibly trembling and could not complete the paper 3368 [forms] because of his tremors." Furthermore, "[e]ven when separating the documents he wanted to present, [plaintiff] had extreme difficulties." (Tr. 253.)

26

Additionally, the ALJ incorrectly concluded that plaintiff could lift up to 50 pounds due to the following testimony at the hearing:

> **ALJ:** And what about lifting?
>
> **Plaintiff:** I don't, I can't lift too much.  Say like maybe 25 or 50 pounds.  Nothing over.

(Tr. 127.)  The ALJ failed to mention, however, that later during the hearing, plaintiff testified that he could not lift 25 to 50 pounds consistently throughout the day, and would only be able to carry a gallon of milk, which weighs approximately eight to nine pounds, two or three blocks before his shoulder pain started to bother him.  (Tr. 135-36.)

Incidentally, one of the main criteria of performing medium work is the ability to frequently lift 25 pounds.  20 C.F.R. § 404.1567(c).  Here, the record reflects that plaintiff did not have the capacity to do so frequently, and the ALJ committed legal error in crediting certain parts of the record and not others, without explanation.

The ALJ also credits parts of Dr. Trimba's opinion while discounting other parts, without an adequate explanation. For instance, the ALJ notes that Dr. Trimba reported "decreased (but symmetrical) range of motion in [plaintiff's] bilateral shoulder," but assigned little weight to Dr. Trimba's opinion, which found that plaintiff "has moderate limitations in his

27

ability to climb steps, push, pull, or carry heavy objects."
(Tr. 337.)  Dr. Trimba further opined that plaintiff "should
avoid overhead activities with his bilateral shoulders."  (*Id.*)
In assigning Dr. Trimba's opinion little weight, (Tr. 22), the
ALJ did so in conclusory fashion, generally citing lengthy,
multipage exhibits, without referencing which pages or portions
of the record supported her findings.  (Tr. 20-22.)

        Based on substantial evidence of plaintiff's
involuntary tremors, which were not reliably controlled with
medication, as well as evidence of plaintiff's shoulder pain
that restricted his overhead movement, the court finds that the
ALJ cherry-picked parts of the medical evidence that supported
her conclusion, while overlooking the parts of the evidence that
contradicted her findings.  *See Artinian v. Berryhill*, No. 16-
cv4404, 2018 WL 401186, at *8 (E.D.N.Y. Jan. 12, 2018) ("Federal
courts reviewing administrative social security decisions decry
'cherry picking' of relevan[t] evidence, which may be defined as
inappropriately crediting evidence that supports administrative
conclusions while disregarding differing evidence from the same
source.") (collecting cases); *Genier v. Astrue*, 606 F.3d 46, 50
(2d Cir. 2010).

        Additionally, when the ALJ posed a hypothetical to the
VE, involving an individual who could only occasionally handle
and finger, the VE stated that such an individual would not be

28

capable of medium work because "[h]andling is critical." (Tr. 143-44.) The ALJ did not ask the VE whether medium work jobs existed in the national economy for an individual who had the exertional limitations and tremors that plaintiff has noted. The ALJ did not adequately explain her findings that plaintiff nevertheless could perform medium work.

Because the court is "unable to fathom the ALJ's rationale in relation to the evidence in the record," the court remands for further findings and a clearer justification for the ALJ's decision. *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982). Here, the ALJ did not give any reason at all for the selective cherry-picking of the record. *See Clarke v. Colvin*, No. 15-cv-354, 2017 WL 1215362, at *9 (S.D.N.Y. Apr. 3, 2017) (quoting *Rodriguez v. Astrue*, No. 07-cv-534, 2009 WL 637154, at *25 (S.D.N.Y. Mar. 9, 2009) (An "ALJ may not 'pick and choose evidence which favors a finding that the claimant is not disabled.'").

On remand, the ALJ should consider and discuss the whole record when determining whether plaintiff has the capacity to perform medium work. Specifically, the ALJ should consider whether plaintiff's tremors and shoulder pain impose a significant work-related limitation.

## CONCLUSION

Federal regulations explicitly authorize a court, when reviewing decisions of the SSA, to order further proceedings when appropriate. "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is warranted where "there are gaps in the administrative record or the ALJ has applied an improper legal standard." *Rosa v. Callahan*, 168 F.3d 72, 82–83 (2d Cir. 1999) (quoting *Pratts*, 94 F.3d 34, 39) (internal quotation marks omitted). Remand is particularly appropriate where further findings or explanation will clarify the rationale for the ALJ's decision. *Pratts, 94 F.3d at 39*. If, however, the record before the court provides "persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose," the court may reverse and remand solely for the calculation and payment of benefits. *See, e.g., Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980); *Kane v. Astrue*, 942 F. Supp. 2d 301, 314 (E.D.N.Y. 2013).

For the foregoing reasons, the court GRANTS plaintiff's motion for judgment on the pleadings; DENIES defendant's cross-motion for judgment on the pleadings; and remands this case for further proceedings consistent with this Memorandum and Order.  The Clerk of Court is respectfully directed to enter judgment in favor of plaintiff and close this case.

**SO ORDERED.**

DATED:    July 23, 2020
          Brooklyn, New York

_____/s/_____
**HON. KIYO A. MATSUMOTO**
United States District Judge